# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. MARTINEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of the<br>Social Security Administration,<br><br>　　　　　Defendant. | No. EDCV 16-1615 SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

John E. Martinez ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case. See Fed. R. Civ. P. 25(d).

social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 12-13). For the reasons stated below, the decision of the Commissioner is REVERSED and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

### III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that

4

Plaintiff met the insured status requirements of the Act through December 31, 2012, and had not engaged in substantial gainful activity since January 17, 2012, his alleged onset date. (Certified Administrative Record ("AR") 18). At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral hip degenerative disease; lumbar degenerative disc disease; distal polyneuropathy; inferior surface tear of the posterior horn of the medical meniscus of the right knee in January 2012. (AR 18).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19).

At step four, the ALJ determined that Plaintiff had the RFC to perform a light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform occasional postural activities; no ladders, ropes or scaffolds; and he would require the use of a cane for ambulation. (AR 19).

The ALJ determined that Plaintiff could perform his past relevant work as an auto body shop owner/manager (DOT 807.137-019) as normally performed, but not as actually performed. (AR 21-22). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Agency's rules. (AR 22).

# IV.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by "substantial evidence" in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

# V.

**DISCUSSION**

**A. The ALJ Erred By Finding Plaintiff's Diabetes Non-Severe At Step Two**

Plaintiff contends that the ALJ erred at step two by finding that his diabetes mellitus was a non-severe impairment. (Plaintiff's Memorandum In Support of Complaint (Pl. MSO) at 6). The Court agrees.[2]

By its own terms, the evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. See Bowen v. Yuckert*,* 482 U.S. 137, 153-154 (1987)*;* Edlund v. Massanari*,* 253 F.3d 1152, 1158 (9th Cir.2001) (stating that the step two inquiry is a *de minimis* screening device to dispose of groundless claims) (quoting Smolen*,* 80 F.3d at 1290). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen*,* 80 F.3d at 1290 (internal quotations and citations omitted). Here, the ALJ applied more than a *de minimis* test at step two when he determined that Plaintiff's diabetes mellitus is non-severe.

---

[2] Plaintiff also argues that the ALJ erred by finding his anemia to be a non-severe impairment. (Pl. MSO 5.). Plaintiff similarly contends that the ALJ erred in improperly assessing his credibility. (Id. at 6-9). However, it is unnecessary to reach Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order.

7

The ALJ stated that Plaintiff's "medically determinable impairment of diabetes mellitus causes only a slight abnormality that would have no more than a minimal effect on his ability to work." (AR 19). To reach this non-severity finding, the ALJ overlooked medical evidence regarding the effects of Plaintiff's diabetes.

As a threshold matter, Plaintiff's diabetes is well established by the record. Lab results from 2011 through late 2013 document hemoglobin levels "consistent with diabetes." (AR 299, 304, 521, 535, 540, 547). Plaintiff testified that he takes insulin and oral medication for his diabetes. (AR 48). He stated that he started taking insulin in 2011. (AR 48-49).

Moreover, the medical record indicates that Plaintiff's diabetes has significant effects on his health. On August 10, 2012, Plaintiff's internist, Dr. Damayanthi Seneviratne, noted his diagnoses as "diabetes mellitus" and "diabetic neuropathy" on Plaintiff's disability insurance benefits form. (AR 516). On December 5, 2012, Dr. Seneviratne again noted the same. (AR 522). Medical records dated October 10, 2013 and March 27, 2014 list Plaintiff's diagnoses as diabetic nephropathy and non-insulin-dependent diabetes mellitus (NIDDM) peripheral neuropathy, among others. (AR 542, 553).

Diabetic nephropathy constitutes "damage to . . . kidneys caused by diabetes. In severe cases, it can lead to kidney failure."

8

See http://www.webmd.com/diabetes/tc/diabetic-nephropathy-topic-overview#1. Likewise, peripheral neuropathy is defined as "nerve damage caused by chronically high blood sugar and diabetes. It leads to numbness, loss of sensation, and sometimes pain in your feet, legs, or hands." See http://www.webmd.com/diabetes/peripheral-neuropathy-risk-factors-symptoms#1. Thus, the ALJ's brief discussion of Plaintiff's condition does not fairly represent the significance of his diabetes and the limitations arising from it, as reflected in the record.

Because a step-two evaluation is to dispose of "groundless claims," and the evidence here established that Plaintiff suffered from a significant form of diabetes, the ALJ erred by finding Plaintiff's diabetes to be "non-severe." See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's diabetes mellitus was a severe impairment at step two under the *de minimis* test.

For the foregoing reasons, the matter is remanded for further proceedings. On remand, the ALJ must evaluate Plaintiff's diabetes as a severe impairment at step-two and include limitations imposed by Plaintiff's diabetes in the ALJ's overall evaluation of Plaintiff. The ALJ must consider the impact of Plaintiff's diabetes on his RFC.

**B. The ALJ Erred By Finding That Plaintiff Could Return To His Past Relevant Work As An Auto Shop Manager**

At step four, the ALJ determined that Plaintiff could perform his past relevant work as an auto body shop owner/manager as normally performed, but not as actually performed. (AR 21-22). Plaintiff contends that the ALJ's conclusion at step four is not supported by substantial evidence. (P. MSO at 3). Plaintiff also argues that the numerous activities required in his past work are inconsistent with his need to utilize a cane when ambulating. (Id. at 4).

At the administrative hearing, the VE testified that Plaintiff previously worked as a manager of an auto body shop, DOT 807.137-010. (AR 42). The VE testified that the position is skilled, SVP 7, light per the DOT but "performed at medium." (Id.). Plaintiff testified that he was the owner of a body shop for about twelve years. (AR 31). Plaintiff stated that, in that role, he would write estimates, answer the phone, talk to customers, mask vehicles, and pick up materials. (Id.). On a regular basis, Plaintiff lifted twenty-five to thirty pounds. (Id.). On a typical day, Plaintiff was on his feet for about six or seven hours. (Id.). Plaintiff testified that sometimes he would be at the business six days a week. (AR 34). Plaintiff also testified that he was responsible for hiring and firing people. (AR 40). He would keep track of employees' hours as well. (Id.)

At the fourth step of the sequential evaluation, the claimant bears the burden of demonstrating that he can no longer perform

10

his past relevant work "either as actually performed or as generally performed in the national economy." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155 (9th Cir. 2008). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). This requires the ALJ to compare Plaintiff's RFC to the physical and mental demands of Plaintiff's past relevant work. "Past relevant work" is work that a claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b), 416.960(b); see also 20 C.F.R. §§ 404.1560(a) 416.965(a).

The ALJ determined that Plaintiff could not perform his past work as it was actually performed. (AR 21). However, this Court finds that Plaintiff is also incapable of doing his past work as it is generally performed, as according to the VE's testimony. Therefore, it was error for the ALJ to conclude that Plaintiff can perform his past relevant work, even considering the limitations provided in the RFC.

The DOT listing provided by the VE states that an individual in this position "supervises and coordinates activities of workers engaged in repairing and painting damaged bodies and body parts of automotive vehicles." (Plaintiff's Exhibit ("Pl. Ex") A at 1). The "Master Description" of this position also states that an

individual in this position "[m]ay set up machines and equipment." (Id.). Under "Physical Demands," the DOT states that this positon "[m]ay involve significant standing, walking, pushing, and/or pulling." (Id. at 4). This Court finds that these requirements are inconsistent with Plaintiff's need to use a cane while ambulating. The evidence of record, and Plaintiff's corresponding RFC, are clearly inconsistent with a requirement that he engage in significant standing, walking, pushing, and/or pulling. They are similarly inconsistent with a potential need for him to set up machines and equipment.

For the foregoing reasons, the matter is remanded for further proceedings. This Court finds that Plaintiff cannot do his past relevant work, even with the current RFC. Therefore, on remand, the ALJ must seek testimony from a VE to determine what work is available to Plaintiff, given his RFC, as possibly modified by the ALJ's findings once he considers Plaintiff's diabetes as a severe impairment.

\\
\\
\\
\\
\\

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 20, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**